1   McGREGOR W. SCOTT
      United States Attorney
2   YOSHINORI H. T. HIMEL #66194
      Assistant U. S. Attorney
3   501 I Street, Suite 10-100
      Sacramento, California 95814
4   Telephone:  (916) 554-2760

5   Attorneys for Defendant,
      NATIONAL AERONAUTICS AND SPACE ADMINISTRATION

6

7

8           IN THE UNITED STATES DISTRICT COURT FOR THE

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  GEORGE MARLIN KNIGHT,          2:-04-cv-2054-MCE-GGH

12        Plaintiff,

13      v.                   **DEFENDANT'S EX PARTE**
                                 **APPLICATION FOR 60 DAY**
14  NATIONAL AERONAUTICS AND     **PERIOD TO FILE DISPOSITIVE**
      SPACE ADMINISTRATION,        **MOTION; COUNSEL**
15                                 **DECLARATION; ORDER**
            Defendant.
16

17

18                         <u>APPLICATION</u>

19        Defendant, through its undersigned counsel of record, requests the Court's permission

20  to file, within a 60-day period, a rather simple speaking motion to dismiss because of

21  mootness, or for summary judgment.  Defendant views the case as moot because by June 2005

22  defendant had given plaintiff all of the requested records, withholding only names and other

23  bits of records to whose withholding plaintiff did not object.

24        The immediate reason for the contemplated motion is that after months of settlement

25  negotiations, with an expectation of settlement on clearly-written terms, plaintiff has just

26  repudiated those terms.  See the counsel declaration below for details.

27

28

                                1

Dated: June 20, 2006

McGREGOR W. SCOTT
United States Attorney

By:     /s/ Y H T Himel
        YOSHINORI H. T. HIMEL
        Assistant U. S. Attorney

## COUNSEL DECLARATION

YOSHINORI H. T. HIMEL declares under 28 U.S.C. 1746(2):

1.  I am an Assistant United States Attorney in the office of the United States Attorney for the Eastern District of California, and am assigned the above-captioned case.

2.  I am seeking a new time in which to file a motion to dismiss or for summary judgment because (1) after months of discussion of an expected settlement, plaintiff has repudiated the settlement; (2) plaintiff has consented to allow me only two weeks in which to file the motion; (3) the next few weeks are the busiest I have encountered for years; and (4) I simply cannot do the needed motion in the next few weeks consistent with my other pressing obligations and consistent with the need to work with NASA and Caltech personnel who may be unavailable for parts of the summer.  Although I acknowledge that the requested period conflicts with the present trial schedule, a rather straightforward motion will make more efficient use of the Court's time than a trial.

3.  By June 2005, NASA had released what in my considered and strongly-held view was every record it could find that was responsive to the two FOIA requests.  Arguably the result was to moot the action.  See Carter v. VA, 780 F.2d 1479, 1481 (9th Cir. 1986).

4.  In particular, by letter dated December 15, 2004, responding to plaintiff's FOIA request for "logs recording the receipt of data from the instruments of the Spirit Rover," see Complaint Exhibit B, NASA released to plaintiff a copy of its telemetry logs, which are computer-generated "logs recording the receipt of data" from all thirteen scientific instruments and engineering cameras of the Spirit Rover, whether or not named in the FOIA request, excluding only the inactive Descent Imager.

5.   From numerous contacts with the Mars project, I take data-sending equipment on the Rover to be classified either as "scientific instruments" or as "engineering devices."  The seven scientific instruments, created for use by the scientific community, are the MiniTES, APXS and Moessbauer spectrometers, the Rock Abrasion Tool ("RAT"), the Micro Imager and the left and right Panoramic Cameras ("Pancams").  The engineering devices, created to help operate the Rover, are more numerous but include six cameras:  the left and right Navigation Cameras ("Navcams") and the four Hazard Cameras ("Hazcams").  Defendant gave plaintiff a key to the ID numbers ("APIDs") for all instruments and devices, including the ones above, by letter dated December 15, 2004.

6.   The English word "log" has a specific meaning.  The Oxford English Dictionary (2d ed., 1989) defines "log" as:  "Any record in which facts about the progress or performance of something are entered in the order in which they become known; e.g. (a) a record of what is found, or how some property varies, at successive depths in drilling a well; a graph or chart displaying this information;  (b) a record kept by a lorry driver in which details of journeys are noted;  (c) a record kept of what is broadcast by a radio or television station from moment to moment."

7.   Thus, the word "log" requires (1) a record, (2) containing particular facts about something's progress or performance, (3) recording those facts, (4) in the order in which the facts become known.  A "log recording the receipt of data" therefore must be (1) a record, (2) containing facts about the receipt of transmissions (e.g., time of receipt), (3) recording those facts, (4) in the order the data are received.

8.   The automated telemetry logs responsive to plaintiff's "logs recording the receipt of data" FOIA request are qualitatively unique.  Aside from manually-written Payload Downlink Lead reports, the telemetry logs are the only type of records responsive to that FOIA request.  Only in them does the computer record entries in the order in which the data are received, that is, in the order in which the packets of information come from space through three worldwide antennas to Caltech's Jet Propulsion Laboratory ("JPL").

9.  To disclose "logs recording the receipt of data," on March 3, 2005, I sent plaintiff an example of manually-written reports by Payload Downlink Leads ("PDLs," "PDL reports"), and an example of a procedures manual for PDLs.  Understanding plaintiff to want this category of logs, by letter dated June 10, 2005, I sent him the PDL reports logging the receipt of data coming from the Rover's scientific instruments and engineering cameras for Sols 1-33.

10.  By letter dated June 10, 2005, in response to plaintiff's FOIA request for logging procedures, see Complaint Exhibit A, I sent plaintiff the written procedures the PDLs follow to write their reports.  Because NASA had by then released every responsive record that it could find by a reasonable search, that records release arguably made the action moot under Carter.

11.  For six months, despite the action's moot state, the parties have discussed settling it by giving plaintiff an additional set of information **not** requested in his "logs recording the receipt of data" FOIA request:  **a list, not a log,** of datafile names.  The listed files are not raw telemetry data; they are assembled from the telemetry packets that conveyed the data from the Spirit Rover's scientific instruments and engineering cameras from Mars to earth.  The datafiles do not have one time of receipt, for they arrive in sometimes-widely-separated packets.  Although the data filename list is beyond the scope of the "logs recording the receipt of data" FOIA request, and therefore is not required by FOIA, plaintiff wanted the list and my client was willing to give it because it was a way to end the case voluntarily and without imposing on the Court's resources for decision.

12.  In an email on January 24, 2006, I sent plaintiff a partial list of filenames conforming to a particular format that may be called "Experiment Data Record" ("EDR") format.  I asked whether a list of all filenames of that type was what plaintiff wanted, and whether giving him the list would resolve the lawsuit.  Plaintiff responded on January 26, 2006, saying:  "A comprehensive list of filenames like the example that you sent will be acceptable.  It needs to cover the 33 sols and include all of the cameras and scientific

1    instruments.  I will also need an official representation that the list is complete.  We will need

2    to discuss the cost."  Exhibit 1 hereto is a copy of that email.

3        13.  Although plaintiff sometimes calls the list of EDRs he seeks by the name "log,"

4    that is a misnomer.  The list is not a "log recording the receipt of data" because the list does

5    not meet requirements (3) and (4), that is, does not record facts in the order the data are

6    received.  In my view it mightily contorts the English language to argue that a list of the EDR

7    filenames is a "log recording the receipt of data" within the scope of the FOIA request.

8        14.  Through the settlement discussions, my objective was to give plaintiff what he

9    really wanted, not to limit him to what he requested.

10       15.  Between January 2006 and this past weekend, I reasonably believed that we had

11   terms for settlement.

12       16.  During the period of settlement discussion, the parties agreed to a framework for

13   settlement.  Exhibit 2 hereto is a copy of a letter dated April 26, 2006, memorializing the

14   framework.

15       17.  At the end of May 2006 I obtained from JPL a CD containing the agreed-upon list

16   occupying about 29,000 lines, each containing an EDR filename.  I also obtained agreement

17   within the government on a particular draft of a certification by a FOIA officer under penalty

18   of perjury.  I supplied the draft to plaintiff by email on May 31, 2006.

19       18.  On June 9, 2006, there was further discussion.

20       19.  The final communication is dated June 12, 2006 and is attached as Exhibit 3

21   hereto.  In it plaintiff repudiates the settlement framework, asserting, contrary to my view, that

22   there are "categories of records in NASA's control that are relevant to the two FOIA requests

23   that have not been turned over," that I have not "disclosed what documents are available," that

24   there are "categories of records that NASA has not admitted having," and that "[t]o date

25   NASA has not given me all of the documents that I lawfully requested."  It ends by

26   challenging me to defend my client in court against such propositions.

27       20.  Plaintiff's repudiation of the settlement framework makes it necessary for me to

28   seek time in which to file a motion to dismiss or for summary judgment, seeking a finding of

mootness.  Case law says summary judgment is the norm in FOIA cases.  E.g., Cooper
Cameron Corp. v. United States Dep't of Labor, 280 F.3d 539, 543 (5th Cir. 2002) ("Summary
judgment resolves most FOIA cases").  Dismissal or summary judgment is a way to dispose of
this FOIA case at a substantial savings of judicial effort.  I am confident that defendant's
position, including its reading of the phrase "log recording the receipt of data," is the correct
one and that dismissal or summary judgment will dispose of the case.

21.  On April 26, 2006, because of the settlement negotiations, the parties had agreed
that we would consent to a reasonable extension of the time, consistent with the case's trial
schedule, to file law and motion.  See Exhibit A hereto.  Plaintiff and I appear to differ on
what period is reasonable.  When he repudiated the settlement framework, plaintiff consented
to only two weeks.  See Exhibit 3 hereto.

22.  I need a period of 60 days to file the motion because I need to work with NASA
and Caltech employees who may be away part of the summer, and because my schedule
includes the following deadlines:  By this Thursday, June 15, I must file our Ninth Circuit
brief in Lion Raisins.  This Friday, June 16, I have hearings in Ward, Gibson and Raffaelly
and expect to receive the opposition to my dispositive motion in Garvey.  On Monday June 19
I have a status conference in Los Padres, plan to file a motion and a status report in Wight,
expect to receive opposition to our motion in limine in Tison, and expect to receive and
review one client's administrative record index in Tahoe Tavern.  On Tuesday June 20 I must
serve responses to three rather voluminous discovery papers in Garvey.  On Wednesday June
21 I have a hearing in Stagno.  On Thursday June 22 I have a hearing in Jones.  On Friday
June 23 I plan to file our reply for summary judgment in Garvey.  On June 26 I plan to file a
reply supporting our limine motion in Tison and must file our jurisdictional motion, if any, in
Tahoe Tavern.  On June 27 I must file our Ninth Circuit brief in Gakawa.  On June 28 I have
a status conference in Wight.  On June 29 I expect to receive and review another client's and
the codefendant's administrative record indexes in Tahoe Tavern.  This schedule goes on at a
slightly-less-frantic pace through July.  I simply need to defer the substantial tasks of

communication within the government and writing in this case, until the quieter coming

weeks allow me a modicum of time to complete the task.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

June 14, 2006.

/s/ Y H T Himel
YOSHINORI H. T. HIMEL

ORDER

Good cause appearing, defendant may file its motion within 60 days of the filing date

of this order.  The pretrial conference and trial are VACATED and may be reset at the motion

hearing.

DATED: June 20, 2006

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE